Good afternoon, ladies and gentlemen. This is the time for our re-hearing on banks in the case of the United States of America v. Juvenile Male, and Judges Reinhardt and Hawkins are with us by telephone today because of inability to travel. Are you both there? Yes, we are. We're here. Very good. All right, so we will proceed to hear argument. The appellant may proceed, Mr. Sullivan. Who's going first? Who's the appellant? The appellant goes first. Yes, but we're re-hearing this on banks. It's as if it's a new proceeding. Aren't we? Yeah, it probably would make sense the other way. Do you want to hear it the other way? Let's hear the government first. Why not? You decided you were right in the first place. Good afternoon. May it please the court, my name is Richard Gordon. I represent the United States in this case. The panel below found a speedy trial violation under the Juvenile Delinquency Act based on this court's 1977 opinion of the United States v. Andy. What the government is asking today is that this en banc court overrule the Andy opinion. The government's position is based on two reasons. First, the Andy rule, which ties the certification procedures under the Act to the speedy trial provisions under the Act, is unsupported by the text of either statute. And the second reason is that it places an undue burden on the government and it places an unworkable rule on the district courts. Essentially, and I'm sure the court is familiar with the Andy opinion, but essentially what happened in the Andy opinion is the state, I think it was the state of Washington, released jurisdiction and let the federal government handle a juvenile prosecution. And in doing so, it ceded jurisdiction but delayed that jurisdiction for five days. And it was this five-day period, I think one of the later cases, the Eric B. case, called this a gray period, was the subject of the controversy in that case. And what the panel did in the Andy case, it set forth a new rule. And that new rule started the speedy trial clock running from, one, the day that the government certified the case, two, the day that the government could have certified the case using reasonable diligence, or three, when the government actually assumed jurisdiction over the juvenile. The principal problem with the Andy opinion is that nowhere in the opinion itself does the Court explain where it got this rule. Nowhere in the text of it. Typically where it got it from. I mean, it seems that there's a prior question, which is whether the detention in the statute is federal detention or any detention. And the assumption of Andy seems to have been that it was any detention. And that is the assumption of at least two of the other circuits that have decided this. And then some of the other circuits say it's federal detention. So until you decide that, you don't really know whether you've got a problem or not, right? I would agree with that, Your Honor. And the statute speaks specifically in terms of an alleged delinquent. And when you're talking about alleged delinquent pending trial, you're talking about the trial which is the subject of the federal proceeding. And that necessarily turns on a federal detention. If you look at the statutes themselves, they're laid out sort of sequentially. If you start with Section 5033, which talks about custody prior to the appearance before a magistrate, it speaks about custody. It does not speak about detention. It talks about arrest and it talks about custody. And when a juvenile is taken into custody, it triggers certain things. But later in that same section, it says as soon after detention as possible. Is there going to be use of detention later in 5033? I don't see it. In the second sentence? I don't have it in front of me either, but I think they do. I don't see it. It says whenever a juvenile is taken into custody for the arrest. In the next sentence. What's the next sentence? The arresting officer shall immediately advise such juvenile of his legal rights and language comprehensive and the juvenile's parents, guardians, custodians, et cetera. After that? The arresting officer shall also notify the parents, guardians, or custodians of their rights. The juvenile shall be taken before a magistrate judge forthwith. And then shall the juvenile be detained. And then the juvenile shall be taken forthwith. Right. And no, then shall the juvenile be detained. For longer. For longer than a reasonable period of time. So that section also uses the concept of detention. You're right, Your Honor. I didn't see that. And it sort of blurs this detention and custody. But if you read 5034, when it talks about the duties of a magistrate, it speaks in terms of a detention order. And then later on in the statute, it says the magistrate judge at some time after hearing at which the juvenile is represented by counsel, the detention of a juvenile is required. And then it talks what the court needs to do to detain the juvenile. And then 503 talks about detention prior to disposition. And then 5036, which is a speedy trial provision, talks about detention pending trial for the alleged delinquent. Why does the Andy Rule impose an undue burden on the government? Well, what it does, it creates this counter motivation for the government, which is counterintuitive of what the government should be doing in the context of a juvenile proceeding. The government ought to be acting cautiously before it drags a juvenile into the federal system. In fact, all of the cases that discuss the Juvenile Delinquency Act, there's almost a presumption against federal jurisdiction because the thought process is that these people, these juveniles ought to be handled in the state system. Now, 5032, which is the certification procedure, actually speaks about an investigation. This is discussed in the Andy case. I'm sorry, in the Eric B. case. And when the government starts looking at a case, as soon as the government starts looking at a case and a prosecutor starts thinking about a case, he's now, what the Andy opinion does, it sort of lights a fire under him and says you'd better make a decision quick because there's going to be a defense attorney who's going to say a reasonable prosecutor should have done things quicker, should have done this, should have done that. And then, therefore, it's sort of, I think, what the Andy, what the Eric B. case says, it errs on the, it creates a system which errs on the side of filing charges. It promotes an inadequate investigation, and it creates a situation where a prosecutor is racing to bring a federal case. What are the factors that a federal prosecutor is supposed to consider before bringing a case in? Those factors are set forth, and I haven't processed them. Well, you say that it's, you know, it's a rush to judgment kind of thing. Sure. What are the kinds of things that they deserve? Well, the certification procedure itself discusses that. You need to look and see if they're adequate. First, you need to look to see if the state will decline jurisdiction or doesn't have jurisdiction. That's the first factor. The second factor is you look to see whether the processes within the state, the services available in the state are adequate to handle the juvenile. And the third thing you look at, and this is more of a practical matter, you look at the actual crime itself. Why is that so hard to decide in a few days? Well, there's also some – well, there's also a lot – there's subtle factors of whether you're going to bring a case, whether you can prove the case. And this is discussed in the Eric B. case. There was a whole host of circumstances that arose within a very short period of time in the Eric B. case. And in Eric B., I think they were only talking about a two-day delay. But in that – They're talking about a several-month delay, so that's kind of a problem. In our case, it was a ten-week delay. One of the cases, this was a 27-month delay, one of the Doe cases. Yeah, I don't think that was a Ninth Circuit case. No. Right. But remember, it's when the juvenile is actually in detention pending a juvenile delinquency trial, it kicks in. If he's in another state system or in a tribal system or outside the federal custody, there are procedures supposedly in place that can be invoked if he's sitting there. In this particular case, there apparently was a misunderstanding between the tribal prosecutor and the tribal defense attorney. And despite this misunderstanding, the defense attorney didn't go out and say, hey, why is my client still sitting there? He didn't go back to the tribal court. But she conceded in the hearing below he could have done and proceeded on with this private case. We could take care of some of your anti-problem by just eliminating the problem that says when it should have been certified, right? And we could just deal with when it is certified. So I understand your problem with that is not a practical problem, but it's a statutory problem. Where is that coming from, right? I'm not sure I understand. Andy says when it's certified or whether it should have been certified. Correct. The practical problem you're pointing to comes with the should have been certified or should have been certified. Well, the practical problem is also, I think I understand your question. I think you're right. But the problem is that you're still grounding a rule that's nowhere in either statute. It's really prophylactically covering a situation that's nowhere to be found in either statute. But could there be a situation where the individual is physically in the custody of the state but sort of constructively in the custody of the feds in the sense that they would be there except for the fact that the feds had filed certification and information and just hadn't gotten around to filing the habeas that would have removed them? I've thought about that a lot. And the answer to that question is I don't think so. I don't think an out-of-federal jurisdiction can simply hold anybody by a phone call from the federal prosecutor saying, we're going to file something, we're going to do this, we're going to do that. There needs to be an independent basis to hold that person. And in this case there was. There were unrelated sexual assault charges pending in tribal court. If there was no basis to hold them out there, he couldn't have been held. Well, there would be a basis that whatever charge would have been filed in the state. But, in fact, everybody knows it's not going to happen because the certification is already been filed. So why is it really the feds who are holding them at that point? In other words, the state has a charge against them. Let's say there were no related charges. The state has a charge against them, which could go forward in the state court or in the tribal court. Then the feds file their certification. So it's not going to go ahead there, but they still have something that applies to him in the state. But until the federal government actually takes their hands on him, he's not in federal detention. The fact that there's some sort of agreement at the state level that let's hold off on this state charge. Remember that he can still be tried on the state charge because at least in the tribal context, actually in the state court context too, he can be tried in both jurisdictions and there's no double jeopardy problems. So the fact that he's getting this benefit by not going forward on this out-of-federal jurisdiction case shouldn't set the clock running, at least for federal purposes. If that's a worry, that he's being held either by a state court or a tribal court at the behest of the federal government, if it could be shown that he's being held at the behest of the federal government, why shouldn't that be federal custody of this statute? I really believe that those particular situations need to be viewed on a case-by-case basis. That would answer the problem that you're otherwise having trouble with. Absolutely. And I think that I cited this with the 28-day letter that was at the en banc case. I'm sorry to say this. There's another bill that came in. But it's the en banc case that talks about that. It talks about a working arrangement type theory. I'm not advocating that that theory should apply in this case, but that's an example of where this Court has had, at least for purposes of custody in the 5033 context, have dealt with the situation where there's a problem, where there's actually a federal nature. But that's not this case. It's not on this record. I don't believe that's this case. Because March 27th was the date they got popped up. The defense counsel will argue, or at least the record shows, that there was an argument made below that the prosecutor, that the U.S. Attorney's Office was somehow involved in the agreement, that the tribal prosecutor was getting word or had an understanding of the U.S. Attorney's Office. That was contested down below. But the district never reached that issue because it found that the consent applied. So does this case have to be remanded no matter what we do on that issue? It can be remanded on that issue, certainly. To see whether there was some kind of a functional agency agreement? What I would suggest to the Court is leave these type of arguments. The question always is, is the defendant or the juvenile in detention pending trial, pending the juvenile delinquency trial? Now, how the federal district courts will handle that will be a product of, A, defense counsel's defense bar's arguments, the U.S. Attorney's arguments, and how the district courts will apply those arguments, and it will trickle up through the appellate system. Right now, I think that particular line of case law hasn't been developed, at least in the Ninth Circuit, because we've had Andy and everybody's been looking at detention. I'm sorry, certification. If there is thinking behind Andy, and we've accepted your view that the certification or should have certified is not a very good line to draw, what is there some feeling that once the decision has been made to prosecute that it really ought to move along and get everything done in 30 days? Well, here you've got to rid of habeas corpus to prosecute him, and you know that he's in jail, and we wait 10 days to execute that writ. I mean, what's going on? Well, that leaves the federal government, and I don't want to speak outside the record, but that leaves the federal government at the whim of whatever the out-of-federal jurisdiction is. I mean, it's up to the federal, for example, the tribe in this case, and so that we can execute this writ. Well, they don't have to grant. I mean, technically you can go in and serve that writ, period, can't you? I think so. I think they need to. Yeah, I think you can too. I don't want to guess. If you have available law enforcement personnel to serve him and transfer him. I wouldn't answer that question. Comment at all on your letter about the dispositional problem? Do I have a comment about that? Yes. Do you want to explain to us how you think that fits into where we are now? It doesn't fit in. It was just an abundance of caution and candor to the court. I looked at the record. I looked at the predisposition report. I saw that Ninth Circuit case out there. I thought if this case goes away on the speedy trial issue, it's not an issue, but if it doesn't go away on the speedy trial issue, it needs to be brought to the attention of the court. Well, for a really jurisdictional, we probably would have to remand to get it fixed before we could do anything. It just seems unlikely that something that goes on in sentencing is dispositional. The cases are all about the transfer to out. Right. But if it were jurisdictional, we'd have to send it back before we can move, do anything here, wouldn't we? Well, it's jurisdictional in the sense that the – There's no final judgment. It's jurisdictional in the sense of the sentence. Right. And so if there wasn't a sentence, could we proceed? I think you can proceed. I mean, as a matter of judicial – Okay. I mean, that was a curious part of it. With that, if that's required before the district court can enter judgment, then normally we'd say, all right, let's remand, have the district court enter judgment, and then we'll take it back. How do you see us proceeding with where you want us to go by following that course? Well, the Andy question in this case is really a question of – purely a question of law. Right. We don't reach questions of law unless it's interesting. The district court didn't have jurisdiction to impose the sentence. How do we reach Andy in this case? I'm not saying we shouldn't. Right. I'm just asking a person to panelify their part. Well, my answer to that is we don't know whether the – we don't know that the district court didn't have jurisdiction. The record was just unclear. You can rule on this Andy opinion and have the district court look at it. At this point, the court needs to assume it has jurisdiction because there's – although there's a question about it, and I think that the – the Ninth Circuit looked at it and ruled on that particular decision and sent it back for the district court to look at it. The same thing can be done here. And in the context of the Speedy Trial Act, both questions can be looked at. Does that help you or not? Or did I skirt the issue too effectively? No. Okay. It's an unusual jurisdiction. It is. And I'm not sure and I'm not too confident with the notion that it's really jurisdictional because those cases I think were decided, and I haven't looked closely at this, but a lot of those cases were decided before they amended the statute. Because those cases were all transfers to adult prosecution, which one can understand being jurisdictional. But it's hard to understand something being jurisdictional, which occurs after the merits of the case has been decided. I agree with you. And I also would say I think the record certification portion of the statute used to say that you couldn't proceed at all. I think it used to say that. And in that case, you know, it seems more jurisdictional in flavor than it does right now. So I don't know if that helps the court. I didn't really look at it. It came up very late in the game, in the middle towards the end of last week when I saw that. I felt that of an abundance of candor to the court that I need. Right. No, I appreciate the position. But why wouldn't it be in the doc achieved in the records somewhere? I mean, is there any rational basis to remand by saying, well, you might have the records around here somewhere. You just didn't. I agree with the court to the extent that it doesn't have the flavor of jurisdiction when you're at that. And I think some of the cases were talking about the remand part of it, and some of them were talking about commencement to proceed. I would point out to the court that the Andy opinion itself was hinged on this notion that somehow the government couldn't proceed at all without a due certification. And the problem with that has been borne out in later case law, but that's not true. And I would cite the court to the Kumo case, and I think there's a Chambers case, a Sixth Circuit case, and there's a Ninth Circuit case, the Baker case, which talks about the language not being ñ not the Baker case. Baker case does it as well, but one of the other cases talks about this isn't language of priority. So long as it's certified somewhere down the line, then it's okay. And I would ask the court to just take a look at this record certification part of it, which talks about ñ uses the word ìuntilî compared to the first part of the certification procedure, which is 5032, which says ìunless.î I'm happy not to say anything else, and I'll reserve the remainder of my time. These cases almost always arising out of the reservations. Are they almost always Indian cases? I will tell the court that when I was preparing for an argument, somebody did come up with an anti-type problem, and maybe it was two anti-type problems, two different cases. I think at least one anti-type problem, and that case was tribal in nature. Well, you can have the situation arise on government reservations as well, military bases, depending upon whether it's exclusive or concurrent jurisdiction with the State, right? I think you're right. I think you can have it in any situation where you have a non-Federal custody. I mean, a lot of the out-of-Circuit cases deal with that. I mean, in the West, obviously, in the Ninth Circuit, we have a lot of reservation cases. But I think the Fifth Circuit case and the Tenth Circuit case, those were all State-based cases, and the argument was, was it Federal jurisdiction or was it not? And I will tell the court that I haven't found one opinion outside the Ninth Circuit and even inside the Ninth Circuit that, A, has explained what ANDI is based on, and so we did a little bit of guesswork trying to figure that out, and, two, has followed the ANDI opinion. But the problem is that the out-of-Circuit cases are themselves in conflict because some of them treat the detention as being Federal and some of them specifically don't and go back to the beginning of the State or Tribal detention. So no matter what we do, we still have a certain conflict. I didn't see the latter line of cases. So at least two of the cases are definitely going back to the beginning of the original detention, not the Federal detention. One of them certainly speaks in terms of, I think there's a footnote that said, and it might have been that. Right. There's one that says the same thing would come out in ANDI because they're going back to the beginning of the State detention, and there's a second one as well. Right. And, again, I think the question will always be and should always be in this circuit, as it is in all the other circuits, it's detention pending trial. And then leave it to the panels to sort of sort that out along the way. No, but we need an answer as to whether we're talking Federal or other detention at least. Right. And the answer is, I believe, and I didn't really catch that line of cases other than that footnote, the answer is Federal jurisdiction. The whole tenor of the Juvenile Delinquency Act is that it needs to be Federal jurisdiction. It says elect delinquents. It says detention pending trial. It wouldn't make any sense if it was anything but Federal jurisdiction. There's similar language in one section of the Speedy Trial Act. Do you have any idea? Have you looked at all to see how under the regular Speedy Trial Act this problem is handled? I think the case line, I mean, I don't want to speak at it because I don't have the case at the tip of my tongue and they told me not to guess, but I think the cases are it needs to be the subject of the Federal proceeding. I believe it would support the government's position. But, again, I didn't look at that too closely. It's still true, is it not, Mr. Gordon, that we're dealing with a relatively small number of cases overall. There just aren't that many Federal juvenile prosecutions because usually there's a way to turn the juvenile defendant over to state authorities for delinquency proceedings. I would answer that question by saying that's the way it ought to be. That's the way the system was designed to work. I don't know the answer in terms of numbers. I mean, it's really an opt-in system. Before the Federal government can get involved in this, they need to opt into the system and file the certification and consider the same sort of things that Your Honor has asked me about. I guess what you're advocating in terms of non-Federal detention, let's assume it's tribal detention, that in that case the question of whether it's transformed into Federal detention would depend on a specific agreement between the tribe or how would you ask us to analyze this? Because there are circumstances, particularly in my state, where we have tribal reservations 500 miles away or more from any Federal facility where they do have a lot of tribal detention. Do you consider that just a straight-line rule that the Feds get involved or is there, if there's a cooperative agreement, you have to analyze that? Again, I think we get, or at least I get myself in trouble when we try to come up with a prophylactic rule that will cover all these cases. I think... Well, let me put it apart fairly. Okay. If we were to remand on that issue, what would the language of the remand say? It would literally simply track the language of the statute. And it needs to be Federal jurisdiction. It needs to be detention pending trial for the Juvenile Act, which is the basis of the Federal proceeding. If there were nothing pending in state court other than this particular charge, here there were no other charges, and the State, the Feds had already sent the certification and filed the information, then could there be an argument that there was essentially constructive Federal detention? Because why else was he sitting there? Let me see if I understand your question. For example, if there's an arrest warrant, a Federal arrest warrant for the juvenile, and the State authorities pick him up on that Federal arrest warrant and there's no state charges pending, I think there would be a very hard way to go for the government to say that wasn't Federal. Well, there was originally a state charge pending, but the Federal government had filed the certification and filed the information but hadn't actually picked the guy up, but there was nothing else pending in state court other than the same charge. I understand your question. I think in that case, because there's concurrent jurisdiction and because there's an independent basis to hold the defendant in the State custody under that scenario, it doesn't happen. Federal detention doesn't happen until the State, until the Federal government comes and picks him up. Can there be an argument to be made? Sure. There's always arguments to be made. But I believe that in that particular scenario, Federal detention doesn't become detention pending the juvenile delinquency act, SF-403-6, until he's actually picked up by the State. What do you mean by actually picked up? When he gets put into Federal detention. Where are juveniles generally held? Because my experience was that most of the time, or a lot of the time, people were held in State facilities by the Marshals. Right. In State facilities until things got hot and heavy in the Federal courts, by contract and by otherwise, because States don't have detention facilities in large measure for juveniles. Well, I don't think that would be. Well, the Federal government doesn't. Right. If he's in detention, I don't think it's going to be a technical fine line depending on where he's being housed. I mean, if he's being held. Well, that's why I asked you what you meant by picked up. Oh, I don't mean. I mean that as triggering time. What do you mean picked up by arrest? Are you talking about picked up when they're in the facility, Tribal detention facility in the Marshal codes? Right. In the execution of the, for example, in a writ of habeas corpus. That's when the clock would start to run. If they take him and they're holding him pursuant to that Federal writ. I'm sorry. If they're holding him pursuant to that Federal writ and they place him in some state facility, for example, Your Honor, I believe in that circumstance, again, there would be a strong argument to be made that that's Federal jurisdiction. They're holding him pursuant to the Federal charges. That's why I asked you what picked up. How was John Doe processed physically, his body? Defense counsel may know that better than me. I don't know the answer to that question. But if March 27th is the date, and it's a little ambiguous because I think both parties used the word around, on, or about, March 27th is the date that the Federal government went out there and actually, and I say picked up, executed the writ and took him out of Tribal custody and placed him into Federal custody, that's the date that the clock should start to run and that's the date that's supported by the language of the statute. I'll reserve the last three minutes. Thank you. Thank you, sir. Thank you. Good afternoon, Your Honor. My name is Reuben Salter, and I represent the juvenile down below. It seems to me I'm going to create, if there is such a word, Federalized. And when I use that term, I want you to think of March the 15th as well because that is the date that the government certified that we're ready, we have checked out everything, there is a Federal interest, and we're ready to go because they filed an information the same date. You further, in my opinion, have to look and see what the purpose of the Federal Juvenile Detention Act is, and it is to get the juvenile in as quickly as possible, get his case adjudicated, and as this circuit has recently said, to get the rehabilitation process going and not to severely put one in prison. Now, if you read those all together, it is clear that the government certified on the 15th of March and also filed their information, the clock starts to run there. It simply does not matter whether he is in physical custody of the United States or with someone else. You have to remember also, my client had been in jail on this particular charge since October the 19th or even the 29th. I'm not sure, one of those dates. Counsel, what effect did the stipulated stay have on the proceedings? None whatsoever because the government was not a party to it. That was simply, I didn't represent him. They had another public defender from the reservation. But in my opinion, it had no effect on what happened because in order to be binding, somebody has to be a party to it. The government was not a party to it, so it can't be binding in any way. And I thought the court below took care of that. And the government, I assume, had backed off of that argument because they didn't raise it in their motion for rehearing in Bach. It could have mattered because if you didn't have that stay and the federal government had not moved between January, you expected them to come pick him up on January 24th. You didn't. At that point, not you, but the lawyer at that juncture, he could have lifted the stay and insisted that the trial court, the tribal court, move forward or not at that juncture. In other words, what it did do was to eliminate one answer to this problem, which is that you have a right presumably to a speedy trial in the state and tribal court as well. But because there was a stay on, he was in there longer than he would otherwise have been. Well, I suppose if I were defending him out on the reservation, that would be a good argument on me. But I think that the reason, well, I know the reason from the record, that it was in the juvenile's best interest to agree to the stay because his defense counsel there detected the gaps and problems mentally. So I don't think that it matters for the purpose of whether or not the plot starts to run and, anyway, the stay would have been over on the 24th. So even if you want to start the plot to run there, clearly. It wasn't there because it had no deadline. It didn't have a deadline. It could have, but it didn't. Well, if the user, and I'm not going to go there with the last prong of the test, Andy, because I think it purely would be dictative because you don't have to reach that. But I think we have to focus on when the government did something to trigger the clock. And my argument is when they certified it and filed the information on the same date, regardless of whose custody it was in, the plot started to run. Well, how can you say regardless though? Because the operative word that we're looking at is detention. It doesn't say when it's certified or when there's any intention. It says detention pending trial. That is correct. And I think it does not say, as the government says, it has to be in federal detention. I argue that detention is the fact that he is being held particularly on the same charge in the tribal facility that subsequently he was charged with an information with. So he is not being detained pending trial under those circumstances necessarily. He's being detained but not pending trial. And the trial seems to be the federal trial. Well, if you don't take that position, then I think you're going to allow this black hole, as you spoke about it, Andy, to come about. He's just out there in Never Never Land. We're not going to allow it. The statute says that's the way it works, detention pending trial. That's true. It says detention. But, of course, the argument is that does it mean federal or any other? Just detention. And I suggest since Congress and the Sentencing Commission had an opportunity to take a look at this, if they felt it should have been federal detention, then clearly I think the statute could have been amended. Were there any tribal charges still pending on March the 15th? Yes. They had been stayed, and they had never done anything. They're still out there. And they'd been stayed pending what was going to happen in the federal court? I mean, that was the reason for the stay? Yes. What had happened originally, the government declined jurisdiction. They said, if the defense and the tribal government can work out a solution to this, then we're going to decline. For whatever reasons, the government changed its mind on December the 30th of 1999, I believe, and said, okay, we're going to start a process for certification. So based upon that, and according to the Attorney General for the tribe, a representative from the U.S. Attorney's Office said that they would start the written paper process within the next 10 days. So the stipulation, the Compensation Code on January the 12th, the stipulation, and it's in the record below, the judge out on the reservation signed it, indicating that was the reason for the stipulation, that the government was going to proceed. Now, I say at that stage the stipulation would have been over with on the 24th because the government did not look at this obligation. However, if you don't buy that, then the government took from the 30th until, I believe, March the 14th, I believe, to complete their certification process. And they had everything out there. They didn't have to do a thing, basically. So that is why I say it became federalized on March the 15th. And the time the clock started to run, because otherwise you're going to allow... Let me make sure I understand. The argument that it was federalized beginning on March the 15th and he was thereafter being held in custody pending federal trial, the argument runs because there was no other purpose to hold him. There were no pending tribal charges. The state and tribal court had been solely to determine whether this was going to happen. So now we have information leading to a federal trial. So from that date, whether it's physically in a federal facility or physically in a tribal facility, your argument is he's being held pending federal trial. He's now being held pending a federal trial. And there's no other purpose to hold him. There's no other purpose. And it would not serve... I beg your pardon, sir. Go ahead. Please, your answer. All I was going to say is physically it does not matter. The government wishes to read into the statute something they fail as that the Ninth Circuit has done, and that is that detention has to be federal. And I'm arguing over here at this stage that when you file an information, there's an arraignment, and you're going to get a trial. So he has to be held pending a trial. My question for you is when he was originally arrested on October 20th of 1999, he was arrested by tribal police based upon tribal law violations. Is that correct? Yes. They were two different... But it was a tribal police officer that he surrendered to. That is correct. Two tribal charges for two teenagers that were unrelated to he had assaulted two Indian teenagers. Okay. Unrelated to this. And it was those charges on which he was being held in January when he entered into this stipulation of the stay of the tribal charges. Along with the one for which we're here now. Well, I thought you said that the United States attorney was not a party to that, so therefore it couldn't have agreed to that stipulation. Okay. But I thought your question was, was he being held solely on the basis of the unrelated charges? Well, what I'm trying to figure out is why is this any different from an inmate in state custody on state charges, and then while he's being held, there are federal charges that are filed and a detainer gets lodged by the U.S. Marshal, which essentially tells the state authorities, when you're done with him, he's ours. You just let us know when your proceedings are completed. And as I understand your argument, your argument is that as soon as the certification was filed, which I presume means filed in federal court in Tucson, there's no corresponding document that gets filed with the tribal authorities until the Marshal lodges a detainer or some form of notice with the tribal authorities who are holding him. They were holding him, if you remember, on not only this charge but the other one. Well, you keep saying the other charge, but when he was arrested on October 20, 1999, the only charges that he was being held on at that point were tribal charges, right? Yes. Okay. Isn't one difference between this and a detainer, and I don't quite understand how this works, but it isn't telling the state, when you're done with him, we want him. It's telling him we want him now. It's preemptive. I don't know if it's preemptive of all the charges or only of the single charge that the feds are charging him with, but it seems to set up so that the feds can come get him and don't have to wait until the state's done with him. That is true because the tribe is a sovereign nation, and there's comity between the two. And what they did was, historically, the government writes to the tribe and say, We are going to take over, and we are going to get the writ. And the tribe said, We will acquiesce. When you show us the writ, we will hand him over to you. And apparently that was a process that went on, and he was handed over to the tribe on the 27th of March. I don't know why the writ was issued on the 17th. I don't know why it took so long. This would be what, a writ of habeas corpus ad prosequem? Ad prosequem. Okay. From the federal court, which is the way that we normally assert jurisdiction over someone who is held in someone else's custody, telling him we want him. And under that scenario, it doesn't matter whether the state has finished prosecuting him. He may be doing a life sentence in the state prison system, but now we're going to writ him out on a writ of habeas corpus ad prosequendum to prosecute him in federal court. And then he may get concurrent or consecutive time, depending on what the federal court decides to do. So why shouldn't physical detention, taking him into physical custody, as the statute seems to infer, be the reasonable interpretation? Well, I think we may differ on when it occurred, but I agree that it's reasonable to assume that when the government took, actually when they filed it and said, okay, here's a writ. If the government was dilatory in going 50 miles to go get them, you shouldn't hold that. I think the clock is running there. And it's their fault. They can't now just take as long as they want. Apparently the Tenth Circuit thinks so. That was the one where they kept the guy 27 months, and they said, well, it's unfortunate. Well, you say the clock starts to run on March 15th, 2000 here. Is that right? That's my position. And how much time then does the government have to do what? They got 30 days to trial him. And what if he's in trial and on another charge in the tribal court and not available? What if there are no marshals to go pick him up? What if there are all of these practical problems that constantly arise when you try to move a person from one jurisdiction to another? Can it stop the clock? Yes, it can. If you look at 5036, it says in the interest of justice that the 30 days can be told. There are three ways it can be told. One, by stipulation the defendant does something, or two, that the government and the defendant agrees, and the third one is that they just can't get him there and the 30 days is running in the interest of justice. I think that's in the last sentence. It says if they just can't get him there? Yes, for whatever reason, that he's not available. It's not tied in the interest of justice that the 30 days will be told. Well, it says in the interest of justice in the particular case. It doesn't say if they can't get him there. And the interest of justice is an awfully difficult concept when you're up front trying to figure out what to do. Well, it just seems simple to me that the mighty government says that we're going to pick this kid up. You ever try to serve one of those writs on another jurisdiction? I used to be an assistant judge as attorney. I know what it's like. I know, and I represent other people over there now. But I think it's mostly secretarial for someone to get a piece of paper and they sit over there someplace and, oh, my gosh, we're supposed to do it. However, that does not excuse my client and his rights. I believe his rights of speedy trial were violated, and I do not believe that there is any requirement to read into, in particular this fact situation, that detention means federal detention. And it does mean federal detention, but it can be essentially constructive. I mean, you seem to be arguing that by arguing that it's triggered by the certification, you must mean that it has to be federalized. You are saying that it has to be. You're not arguing that we should go back to the beginning of the tribunal. Oh, no. That would be an unrealistic interpretation of it. It seems to me that you have to be arguing for federal detention, but rather you're trying to define it as not meaning the time they physically get hold of them. Right, and I think that's what the whole problem is, that the Ninth Circuit was struggling to, in any, to define what custody was. Who appoints a lawyer for him in federal court when federal courts finally get their hands on him? The federal district court, the way they do it in Arizona and Tucson, is apparently that administrative duty just falls upon the public defender. That doesn't kick in until the feds actually have their hands on him and bring him into the court. He's called, apparently the marshal called the clerk and said, we have a clerk that says, okay, we're going to have an initial appearance on that state, and public defender, you appoint, you have someone there on your list. I'm a CJA attorney, and it so happened my name came up, and I went over on that date. That's how it's mechanically handled. And if it's taken 15 days from the time of, say, certification and filing the information, while he's still in tribal custody, you've only got 15 days before trial. So what I assume is going to happen is as soon as you're appointed, you're going to move for a continuous. But as soon as you move for a continuous, that stops the clock. Because that's what your request is. Yes, yes. That would happen unless the case was so simple and I had so much experience that I could go and be ready to try one. I mean, I could have it at most cases, but not this one, because there was one piece of evidence that was missing was the results of some fingerprint test that had not come back. But most of these cases aren't that difficult. This is the more difficult one. But an experienced attorney could try one. He could be ready in 14 days if he worked hard at it. But I just think that we'll remember that on all the Strickland cases that come up. I just think that we don't have to overrule Andy. And I heard a question was on the basis of what would happen if the lower court did not have jurisdiction because there was not the certification by the clerk that's required in the Doe case. I think if I win, that's over with. If the government wins, they've got to send it back for a determination. So I don't think we'd want to waste all that time on just having this hearing, just let us win up here at this stage on the basis of there's really nothing new that the government has said. Well, that's a very practical approach. Is there anything in the record to indicate that the tribal authorities would simply let the case go, dismiss everything if the federal government took jurisdiction? Yes, that was the agreement. If the government took jurisdiction, the tribe wasn't going to worry. Because at most, he would give us six months. For all of his charges or just the one, the August assault? On the assault on the schoolteachers was that agreement. But the other charges were never dropped. They still haven't been dropped. They're still sitting out there as far as if his lawyer calls me up and wants to know where his client is and I tell him he's over in New Mexico at the school. Nobody seems to be doing anything. Does it make any difference to your whole theory that there were, in fact, other charges pending upon which he was properly in tribal court at that point? In other words, could there be a different rule depending on whether there were other charges on which the state or tribal court was holding him or not? I have to be careful when I answer that because if you include the ñ well, I separate the nonrelated charges as to the federal one. If you then include all of the two charges together, this one and the unrelated, then the answer is that I think he's in custody and it wouldn't matter. No, I understand. What I'm asking you is suppose this case were the same as it is now but there were no unrelated charges, right? Would that, A, and, B, if there are related charges, does it make a difference with regards to whether after the period of the certification is filed, is he being held on federal ñ is he being held pending trial in the federal court or is he still being held at least partly pending trial in the tribal court because there's still a possibility of that? No, he's being held on federal charges. In fact, the question was were they house juveniles. Since the Fed has very little or no place, it would be just a contract, as someone said out here. It could be particularly in Arizona they have them, Santa Cruz County because they don't have enough, or even go to Apache County and wherever they can find them. Actually, I've had one where they were in a sort of like a halfway house. And it doesn't matter in the government's case whether he's there in Pima County Jail or in a federal detention center if they had one for juveniles and space was available. That doesn't help him in any way in preparing his case, which apparently they are arguing that we can't go forward until we get him in physical custody. And the Fifth Circuit, it's interesting, I don't know what they would do in this case because they define custody as being restricted. And certainly when he's out at the reservation, he's in restricted custody. So I see no reason nor has been cited the government has tremendous problems with Andy in this district. I would have thought they would have cited all kinds of statistics and affidavits from people coming in. But absent any of that, I think they just saw an opportunity to get rid of a case that requires the government to get on the ball and treat juveniles the way that Congress intended and give them preferential treatment. Thank you. I'll be quick. To answer the question does it matter whether there are other charges pending, the answer is yes, it does matter. Because the prejudice only kicks in, the speedy trial provision only kicks in when he is in detention pending trial. If proceedings are going on anyway, what this statute is designed to protect. But in your theory it wouldn't matter because in your theory until he's in federal physical custody, there's nothing that's kicked in. So it doesn't matter whether there are other charges or there aren't. I see your problem is you're saying that can state custody be essentially considered federal custody. That is if it's the same charge. Yeah, only if it's the same charge and only if there's no other reason that you can figure out for why he's still in there. Right, and I've heard constructive federal custody being used. But the question always is, is he in custody pending trial? It doesn't make any sense at all if he's in custody pending some state trial or some tribal trial. Why should it kick the speedy trial provision? Well, that's why I think it might make a difference if there were other charges. Because if there were other charges, then it's plausible that he's pending trial in the state or tribal court. But if there aren't any other charges and the feds have already said they're going to take it over, then the state doesn't really have the option to continue the state trial because the feds are going to come take him. On that particular charge. On that particular charge. Right. I don't know what the options are in the state in those circumstances. But I need to clarify for the court that the prejudice in this case comes into effect only because of the stipulation entered between the tribal counsel and the defense counsel. Now, the defendant can't have it both ways. I mean, if the government wasn't involved enough to take advantage of that consent, then the government ought not be stuck with kicking the speedy trial provisions within the same breath. I mean, it's one way or the other. But in this particular case, if there was a problem with this agreement between the tribal prosecutor and the tribal defense attorney, what the tribal defense attorney should have done is simply got on the phone and called the U.S. Attorney's Office to verify this after the writ didn't appear by January 24th or contacted the tribal prosecutor and figured this out. But that's where the prejudice comes in. The prejudice actually being held in abeyance was, based on this record, wasn't the fault of the federal government. In fact, based on his argument, the defense counsel's argument, the government didn't know about it. What's the harm or the difficulty of the federal government once they've executed the certification and filed the information on the 15th of March? They know they're going to trial. They know there are no other tribal charges that are about to be prosecuted. They may be hanging out there in some amorphous way. They know, in practical fact, that the only reason he's now being detained is because he's about to be tried. Why shouldn't that be the triggering date? Well, first and foremost, that's not what the statute says. I mean, the statute has a number of things. The statute says pending trial. Pending trial. That's right. Certification doesn't mean pending trial. Well, but you've now not only certified, but you have also filed the information. And it may be the information that's a critical point. At that point, I think he's pending or something's pending. The trial's coming up. Well, again, the question can be handled in the same context of all these questions, is does the detention become federalized in some sense? That's my question. Not just because of certification, but because he's being held solely on the basis of these federal charges. That's exactly my question. And that needs to be dealt with on a case-by-case basis, just like you guys. I understand. I mean, is it or when you say case-by-case basis, give me an example of how you would resolve it on a case-by-case basis. Say, for example, and this is not, I don't think, uncommon, depending on the reservation. Federal prosecutors will pick up so-and-so. We'll figure out who's going to prosecute him later. So there aren't any charges pending in either court. There's a certification from the federal court filing. The state says, well, hold on until you get up here. And then there might be two or three or four weeks before a marshal can travel and pick up the person. Am I giving an example that's just apples and oranges for you? Yeah. And I'm not sure you think how – I know you don't think this can happen, but it can happen. Or there actually aren't any charges pending. You pick him up in tribal court because there aren't the procedural safeguards. And then you say, well, let's figure out who's going to prosecute him for this event. When should it kick him out? I would disagree with the inline premise. I don't know that that happens. Assuming that it does happen, on a case-by-case basis, what the district court needs to look at and what the defense attorney would argue is, hey, somebody at the federal government told you to pick him up pending these charges, pending whatever these juvenile charges were. In that case, Your Honor, this is what I think. I think he was in detention pending trial. Now, whether you call that constructive federal custody or you call it federal detention or you call it non-federal detention being used for purposes of trial. But I do understand your position to be that even if there were only – if there were no other charges in this case but just this charge and everything that happened happened and there also wasn't a stipulation. Let's take that out. You would still – No stipulation? No stipulation. You would still say that until they actually issued the habeas, that there – that he was not being held in federal detention. If there was no agreement, no stipulation, no consent at all, he's being held in tribal custody and – Even though we know that because of the certification and the information that, in fact, he's going to be tried in federal court – He's going to be tried in federal court. He's pending federal court. Can you respond to that? Even though you know he's going to be tried in federal court? Well, the problem is that the tribal prosecution continues on until at some point they understand that it's going to turn federal. They can't simply hold on to him once they cancel the charges. Okay. The line has to be drawn somewhere, and that line is drawn by the statute. Okay. May I take the prerogative of the chair and ask you one question? There's been a circuit split on this issue almost as long as I've been a federal judge, which is a very long time. Has the government tried to get cert on this issue before going to Mr. Salter's last point? Is this really a problem? If it were a big burning issue, one would think it would have been resolved a long time ago. I think it is a problem. From what I've seen, at least in our office in the Arizona office, based on my limited involvement, trying to figure out in advance when this speedy trial kicks in is a problem, as demonstrated here today. The easier rule is the rule that the statute requires. Could there be another rule out there? The answer is you don't know whether the government has sought cert on this issue. Thank you. Thank you, counsel. The case is argued and submitted for decision. The court stands adjourned.
judges: Schroeder, Canby, Reinhardt, Trott, Tg. Nelson, Hawkins, Thomas, W. Fletcher, Berzon, Tallman, Rawlinson